## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIAM YEAGER, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.  20-cv-00755 (RC) |
| | ) | |
| NATIONAL PUBLIC RADIO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on defendants' motion to dismiss and memorandum in support ("MTD Mem."), collectively ECF No. 12.  The court will grant the motion and dismiss the complaint with prejudice for the reasons discussed herein.

I.  BACKGROUND

i.    The Instant Lawsuit

Plaintiff, a resident of Cottonwood Falls, Kansas, who is proceeding *pro se* and *in forma pauperis* ("IFP"), filed the complaint in this matter on March 17, 2020.  *See* Complaint ("Compl."), ECF No. 1, at p. 1; *see also* Application to Proceed IFP, ECF No. 2; Min. Ord. (Apr. 14, 2020) (granting IFP application).  Plaintiff identifies as a "songwriter/musician, independent filmmaker, humanitarian[,] and media activist."  Compl.  ¶¶ 9, 194.   He describes this matter as "a case concerning a serious Tort of Negligence against National Public Radio (NPR) and members of [] NPR's journalistic staff, management/corporate team, legal counsel and board of directors."  *Id.* ¶¶ 1, 56–62.   He names as defendants: National Public Radio ("NPR"), Andrew Flanagan (NPR

1

journalist), Jacob Ganz (NPR journalist), Elizabeth Jensen (NPR journalist and "Ombudsman"), Michael Oreskes (former NPR journalist and former "VP of News and Editorial"), David Sweeney (former NPR journalist and "former chief news editor"), Edith Chapin (NPR journalist and "Executive Editor/ Senior Manager"), Mark Memmott (NPR journalist and "Senior Editor of Standards and Ethics"), Carline Watson (NPR's "Executive Producer" of "All Things Considered"), Ashley Messenger (NPR attorney), Jonathan Hart (NPR attorney), Terri Minatra (NPR attorney), Gregory A. Lewis (NPR attorney), John Lansing ("CEO of NPR"), Paul Haaga (former "NPR Board Chairman"), and finally, Christopher Turpin (NPR's "Vice [P]resident of News"). *Id*. at p. 2; *see also id*. ¶¶ 27, 47, 50, 56, 82, 85–6, 105, 113, 117–18, 126, 131, 146, 149, 151–52, 162–63, 165, 167, 180, 183, 204.

At root, this case arises from an article, published by NPR on its own website on March 23, 2017, entitled: "The Most Expensive Record Never Sold, Discogs, Billy Yeager and the $18,000 Hoax that Almost Was." MTD Mem. at p. 2; *see also* Decl. of David J. Bodney, ECF No. 12-1, ¶ 2; MTD Ex. 1 (copy of the article), ECF 12-2. Flanagan authored the article. *See id*; *see also* Compl. ¶ 47. On March 24, 2017, the article was then discussed as a topic on NPR's radio-show, "All Things Considered." Compl. ¶ 19. Flanagan and Ganz both participated in the broadcast. *See id.* ¶ 162.

The article and broadcast covered the intended sale of plaintiff's copy of a 1989 vinyl record, "301 Jackson Street." *Id.* ¶ 11. The record was offered for sale in January 2017 on Discogs, an online marketplace for music collectors. *Id.* The transaction was going to set a record as

Discogs's most expensive ever. *Id.* ¶¶ 11, 45. On March 22, 2017, Discogs sent a press release to NPR regarding the sale, but the following day, Discogs cancelled the sale because they believed it was fraudulent. *Id.* ¶¶ 12, 45, 128. Notwithstanding, plaintiff insists on the validity of the sale, noting that he has never been charged with any crime; he believes that Discogs was falsely influenced by NPR. *See id.* ¶¶ 16, 20, 25.

Plaintiff contends that both the article and the broadcast, which he purports was heard by millions, contained intentional, malicious, and biased "defamatory accusations and malicious falsehoods[,]" that were never properly verified. *See id.* ¶¶ 14, 19, 22, 26, 45–6. He alleges that he was never "contacted and offered the opportunity to reply and defend himself against the attacks on his character and reputation." *Id.* ¶ 19. NPR contends, to the contrary, that the article and its contents were well-researched and properly vetted. *See* MTD Mem. at pp. 1–2.

Plaintiff alleges that he was depicted as a corrupt and dishonest individual with a "hunger for fame, or infamy[,]" who enjoyed "the chase of pulling the wool over people's eyes" and that the article claimed that he "repeatedly poured more of his creative energy into being a trickster-booster than he has as an artist[,]" due to a life "of purposeless obfuscation[.]" *See* Compl. ¶¶ 23, 27, 167, 182. In response to the article and broadcast, NPR listeners allegedly sent plaintiff messages that were "extremely offensive, insulting, [and] contemptuous[.]" *Id.* ¶¶ 24, 45.

Around June 2017, plaintiff contacted Messenger to request removal of the article and broadcast. He alleges that her response was unsympathetic and contained implicit admissions that NPR had failed to do its due diligence, and sometime thereafter, the article was removed from the

3

website.  *See id*. ¶¶ 28–31, 49, 178.  Both parties agree that plaintiff declined to provide some of the information sought by Messenger during these exchanges.  *See id.* ¶ 31; MTD Mem. at p. 3. Plaintiff states that, in addition to the article's removal, he wanted, and still wants, "a true apology, a public statement to the audience explaining what NPR had done wrong, a new article and broadcast telling the truth about his and his wife's work and mission and benefit concerts, and recompense for damages to his work and health."  Compl. ¶ 33.  At the time, NPR offered plaintiff an opportunity to "write his own story[,]" with the caveat that it reserved the right not to publish his statement if such publication would create liability for NPR.  *See id*. ¶¶ 39–41; MTD Mem. at pp. 3–4.  According to plaintiff, NPR eventually reposted to the article to its site, and it has since remained accessible to the public.  *See* Compl. ¶¶ 128, 185.

Plaintiff alleges that all of these actions, namely, "[p]ublishing and broadcasting accusations of fact that had not been verified and for which there was no evidence[,]" *id.* ¶ 124, and defendants' alleged continued failure to correct their actions and make proper amends, constitute professional negligence and malpractice, *see id.* ¶¶ 1, 21, 38, 43, 56–66, 78, 105, 118, 120, 128, 131, 144–7, 154–61, 167–68, 174, 182, 200, 202; *see also* Pl.'s Opposition ("Opp'n"), ECF No. 20, ¶¶ 68–70, 73, 91, 97 (also describing plaintiff's intention to "prove numerous violations of the journalistic standard of care and the standard of care of supervisors, executives, directors, and officers of a company/corporation/organization receiving federal funding.").

He contends that "National Public Radio . . . and members of NPR's programming staff, corporate/legal teams and board of directors[] are expected, the same as any other professional in

the United States of America, to exercise . . . reasonable care in their actions, by taking account of the potential harm that they might foreseeably cause to other people or property."   Compl. ¶ 60. He advocates that defendants should be held to a higher standard of care because  "as part of the 'public media' system in the USA, [they] not only have a bigger responsibility than other media outlets in the country to serve the public (by informing, educating, enlightening and enriching the public and helping inform civil discourse essential to American society), but they also have Duty of Care (a legal obligation that requires they adhere to a standard of reasonable care while performing any acts that could foreseeably harm others) to all American citizens" because of NPR's receipt of federal funding.  *See id.* ¶¶ 61, 67, 72, 119, 199; Opp'n ¶¶ 55, 97.  He further alleges that the individual defendants are either directly or vicariously liable based on their knowing failures to follow NPR's own "Handbook" and "Codes of Rules, Standards and Ethics," as well as the standards set forth in the Corporation for Public Broadcasting's "Mission Statement," and other standards espoused by the "American Society of News Editors," and the "Society of Professional Journalists, Sigma Delta Chi."  *See id.* ¶¶ 13, 17, 20, 24, 32, 39, 44, 62–5, 69, 73–6, 78, 90, 102, 113–14, 116–18, 124, 127–29, 131, 133–46, 149, 153–4, 161–66, 169, 180, 188–9, 196–200; Compl. Ex. A (NPR Handbook), ECF No. 1-1; *see also* Opp'n ¶¶ 16–19, 22, 25–7, 29–37, 57, 74–88, 92.

As a result of the alleged reputational damage, plaintiff states that he suffers from severe depression and suicidal ideations, and other emotional and physical distress.  *See* Compl. ¶¶ 7, 29, 52, 45, 54–5, 173, 207–09.  He further alleges that he and his wife have suffered economic

damages, for example, potential business partners in their charitable endeavors withdrew from scheduled events, *see id.* ¶ 37, 45, 173, 183.  He demands unspecified compensatory damages and $500 million in punitive damages.  *Id.* at 57.

On December 14, 2020, defendants filed the pending motion to dismiss, arguing that the case should be dismissed pursuant to Federal Rule 12(b)(6), on one or more of three total bases, specifically: (1) res judicata and collateral estoppel; (2) failure to comply with the statute of limitations,[1] and; (3) failure to state a claim upon which relief may be granted.  *See* MTD Mem. at pp. 12–20.  Plaintiff filed an opposition on January 18, 2021, and on January 25, 2021, Defendants filed a reply ("Reply"), ECF No.  21, in response to the opposition.  Plaintiff filed a motion for leave to file a surreply, ECF No. 26, with the intended surreply ("Surreply") contained therein, ECF No. 26-1, and leave to file the surreply was granted by court order, ECF No. 28, the following day.  Consequently, this matter is now fully briefed for the court's consideration.[2]

    ii.    Other Lawsuits

        a.  The "Kansas Case"

---

[1]    Because the court will dismiss all claims on the other two noted bases, it need not reach the parties' arguments regarding the statute of limitations.

[2]    Plaintiff has also filed a consent motion for leave to file a "note" with the court, ECF No. 29-1. That motion, filed on February 16, 2021, does not seek specific relief, but instead was intended as a notification that plaintiff was, at the time, going to be living temporarily and intermittently between both Florida and his address of record in Cottonwood, Kansas.  *See id*. at p. 1.  He further indicated that, while in Florida, he would have limitations with email access, but that this arrangement would "in no way affect his handling of the case[.]" *Id.* The court has taken notice and reviewed this filing, and to the extent that plaintiff sought leave to file the "note," the motion will be granted.

Plaintiff has filed other lawsuits against NPR, among other defendants, regarding the same circumstances raised in the instant lawsuit.  He filed the first suit, *Yeager v. NPR, et al*., No. 5:18-cv-4019 (hereinafter, the "Kansas Case"), on March 6, 2018, in the United States District Court of the District of Kansas. *See generally* Compl., ECF No. 1.  In the Kansas Case, plaintiff sued NPR, Flanagan, Ganz, and Messenger. *Id.* at p. 1.  Defendants filed a motion to dismiss, ECF Nos. 13–14, and upon review, the court issued a memorandum opinion finding that the complaint would be dismissed for failure to state a claim unless plaintiff filed a suitable amended complaint, correcting several noted deficiencies. *See id*. at First Memorandum Opinion ("First KS Mem. Op."), ECF No. 29, at pp. 14–29.

Yeager then filed an amended complaint, predicated on the same set of facts. *See id.* at Amended Complaint ("KS Am. Compl."), ECF No. 36, at pp. 4–51.  In the amended complaint, plaintiff raised alleged claims for defamation, "false-light/invasion of privacy," and "outrage." *See id.* at pp. 2–3, 7, 9, 46 51–63, 74, 77–81, 116–17, 131–32, 139, 176, 186–92, 205, 208–17.  The amended complaint also included the "tort of negligence." *See id.* at pp. 104–05, 128–9, 139–86.  For example, he alleged that Messenger was negligent for refusing to agree to remove the article from the website, or to make other suitable amends for the alleged defamation. *See id*. at pp. 15–16, 21–2, 27, 30–5, 43, 46, 52, 60, 74, 119, 139–86. While plaintiff did not formally sue specific individuals, he discussed the alleged liability of "NPR's 12 board of directors, managers, general managers, editorial managers, Jonathan Hart

(the other lawyer for NPR), Mark Memmott (NPR's supervising senior editor for Standards & Practices), Christopher Turpin[,] and at least a dozen more people," as well as "C.E.O. Jarl Mohn[,]"and other "superiors," contending that they were all "responsible for increasing [his] pain and suffering[,]" in some combination of direct negligence and/or supervisory liability. *See id.* at pp. 15, 39, 46, 59, 174, 197 202–03, 214, 216.

Upon review, the District of Kansas found that Yeager's claims failed because NPR's statements were: (1) not made with actual malice; (2) based on the speaker's subjective opinion; (3) not defamatory, and; (4) were so vague as to be subject to multiple interpretations. *Yeager v. Nat'l Public Radio*, 2018 WL 5884596, at *3–*9 (D. Kan. Nov. 9, 2016) (citing First KS Mem. Op. at pp. 17–26). The court also found that the offending statements were protected by the First Amendment and that plaintiff was a limited-purpose public figure due to the newsworthiness of the Discogs incident. *See id.* at *3, *6, *id.* n.2 (citing First KS Mem. Op. at p. 15), *7. Further, none of the allegations attributed to Messenger were found to be actionable. *See id.* at *9 (citing First KS Mem. Op. at pp. 27–8). Consequently, defendants' motion was granted, and the matter was dismissed with prejudice pursuant to Federal Rule 12(b)(6). *Id.* at *10; *see also* First KS Mem. Op. at pp. 7, 29.

Plaintiff then appealed this determination to the United States Court of Appeals for the Tenth Circuit, *see Yeager v. NPR, et al.*, No. 18-3252, and he also filed a motion for reconsideration with the trial court, *see* Kansas Case, at Mot. (Dec. 8, 2018), ECF No. 15.

The trial court denied the motion for reconsideration, *see id.* at Ord. (Jan. 9, 2019), ECF No. 57, and the Tenth Circuit affirmed the trial court's dismissal,[3] 773 Fed. Appx. 1030 (10th Cir. 2019), finding that the appellate "briefs offer[ed] little more than generalized assertions of error, together with attacks on the appellees and their counsel[,]" *id.* at 1032.  On December 16, 2019, the Supreme Court denied plaintiff's petition for writ of certiorari, 140 S. Ct. 665 (2019).

      b.   The "Arkansas Case"

Plaintiff filed another lawsuit against NPR and a local Arkansas radio station, *see Yeager v. KUAF 91.3 NPR Pub. Radio*, No. 5:20-cv-5054-TLB (W.D. Ark.) (hereinafter, the "Arkansas Case"), on March 23, 2020, in the United States District Court of the Western District of Arkansas, *see generally* Compl. ("Ark. Compl."), ECF No. 2, and that court screened the complaint, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), dismissing it for failure to state a claim, *see* 2020 WL 2449348, at *3–*6 (W.D. Ark. May 12, 2020).

---

[3]    To any extent that plaintiff suggests that he may seek review or re-litigate issues that the Tenth Circuit found that he had failed to preserve for appellate review, *see* Opp'n ¶¶ 41–2, there is no basis for jurisdiction to do so in this court.  *See* 28 U.S.C. §§ 1331, 1332 (general jurisdictional provisions); *Panko v. Rodak*, 606 F. 2d 168, 171 n.6 (7th Cir. 1979) ("[I]t seems axiomatic that a lower court may not order the judges or officers of a higher court to take an action."), *cert. denied*, 444 U.S. 1081 (1980); *United States v. Choi*, 818 F. Supp. 2d 79, 85 (D.D.C. 2011) (stating that federal district courts "generally lack[] appellate jurisdiction over other judicial bodies, and cannot exercise appellate mandamus over other courts") (citing *Lewis v. Green*, 629 F. Supp. 546, 553 (D.D.C. 1986)); *Fleming v. United States*, 847 F. Supp. 170, 172 (D.D.C. 1994) (finding same) (applying *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415, 416 (1923)), *aff'd*, 1994 WL 474995 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1150 (1995).

More specifically, the court found that the District of Kansas had "already decided Mr. Yeager's defamation claim" and that it was thus barred by res judicata and collateral estoppel. *See id.* at *4–*5.   Consequently, the defamation claim was dismissed with prejudice.  *Id.* at *6. The court found some hesitation in precluding the false light claims by res judicata, because under Arkansas law, defamation and false light are treated separately, and in the Kansas Case (and under Kansas law), the claims were analyzed jointly.  *See id*. at *5 n.5.  The court nonetheless dismissed the false light claims without prejudice because plaintiff had not pleaded facts that could plausibly show that defendants acted with actual malice.  *See id.* at *5.  Finally, the court dismissed with prejudice the newly raised professional negligence claims because Arkansas law does not recognize a separate cause of action or heightened standard of care for journalists, and plaintiff had not otherwise established a duty of care attributable to defendants for ordinary negligence. *See id*. at *5–*6.

Plaintiff appealed this determination to the United States Court of Appeals for the Eighth Circuit, which issued its mandate on March 3, 2021, summarily affirming the judgment of the trial court.  *See* No. 20-2198, at Mandate (8th Cir. Mar. 3, 2021); *see also* Arkansas Case at USCA Judgment, ECF No. 17.  Plaintiff also filed a motion for reconsideration with the trial court, *see* Arkansas Case at Mot. ("AK Mot. Recon.") (June 10, 2020), ECF Nos. 10–11, which was denied on October 13, 2020, *see id*. at Ord., ECF No. 15.

    c.  The "Massachusetts Case" and "Wisconsin Case"

On March 21, 2020, plaintiff filed a lawsuit in the United States District Court for the Eastern District of Wisconsin, *see Yeager v. WUWM 89.7 Milwaukee NPR Pub. Radio*, No. 2:20-cv-459-PP (E.D. Wis. Mar. 21, 2020) at Compl., ECF No. 1, and on the following day, filed another lawsuit in the United States District Court for the District of Massachusetts, *see Yeager v. WBUR 90.9 Boston NPR Pub. Radio*, No. 3:20-cv-30028- KAR (D. Mass. Mar. 22, 2020) at Compl., ECF No. 1.  The complaints in those matters raise substantially similar issues and claims against NPR and respective local radio stations.  *See generally id*.  Defendants do not appear to have been served yet in the Massachusetts case, and have only been partially served in the Wisconsin case, and consequently, defendants have not yet responded, nor has either case yet progressed to any analysis on the merits.

## II.    LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule 12(b)(6), a court must "treat a complaint's factual allegations as true . . . and must grant a plaintiff 'the benefit of all inferences that can be derived from the facts alleged.' " *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  Where an action is brought by a *pro se* plaintiff, as in the instant matter, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)), and such complaints are held "to less stringent standards than formal pleadings

drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  Nevertheless, a court need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept a plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal,* the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* at 678.  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged."  *Id.* at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Additionally, when a plaintiff is proceeding IFP, a court is mandated to dismiss a complaint which fails to state a claim upon which relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii); *see also Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that a *sua sponte* dismissal is proper for failure to state a claim pursuant to Fed. R Civ. P. 12(b)(6)).

In ruling upon a motion to dismiss for failure to state a claim, a court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. Appx. 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)).

A defendant may also assert in a Rule 12(b)(6) motion to dismiss that the issues or claims are barred by res judicata or collateral estoppel. *See Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 76–77 (D.C. Cir. 1997).  And the court may take judicial notice of public records from other proceedings in deciding whether a complaint asserts a claim or issue barred by res judicata or collateral estoppel. *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

III.   DISCUSSION

a.   Res Judicata

The doctrine of res judicata, or claim preclusion, acts to "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation."  *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981). As explained by the Supreme Court:

13

> [T]he doctrine of res judicata provides that when a final judgment has been
> entered on the merits of a case, '[i]t is a finality as to the claim or demand
> in controversy, concluding parties and those in privity with them, not only
> as to every matter which was offered and received to sustain or defeat the
> claim or demand, but as to any other admissible matter which might have
> been offered for that purpose.'

*Nevada v. United States*, 463 U.S. 110, 129–30 (1983) (quoting *Cromwell v. Sac County*, 94 U.S. 351, 352 (1876)).

Where, as here, the rules of decision in prior case were supplied by state law, a federal court must rely on the preclusion law of the state in which a judgment was issued to determine the effects of res judicata, including collateral estoppel, of such judgment. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380–82 (1985); *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946).

Defendants maintain that the decision in the Kansas Case is claim preclusive as to NPR, Flanagan, Ganz, and Messenger. *See* MSJ Mem. at pp. 14–16. Under Kansas law, res judicata bars re-litigation of a subsequent suit where there exists: (1) a judgment on the merits in the earlier action; (2) identity of the parties or privies[4] in the two suits; (3) identity of the cause of action in

---

[4]     While defendants do not raise it, there may be a valid argument that even the "new" defendants in this suit are in privity with NPR and other previously sued defendants. For instance, under Kansas law, "a judgment in favor of a principal is conclusive between the plaintiff and an agent of the principal[]" for purposes of res judicata. *Hall v. Doering*, 997 F. Supp. 1445, 1462 (D. Kan. 1998) (applying Kansas law*); see also Midwest Crane & Rigging, LLC v. Schneider*, No. 113725, 2016 WL 1391805, at *7 (Kan. Ct. App. Apr. 8, 2016) (finding that res judicata applies to subsequent claims against employees because the employer is liable for all acts if they are committed in the course of their employment, either in the execution of their express authority or within the confines of their apparent authority); *State v. Parson*, 15 Kan. App. 2d 374, 808 P.2d (continued . . . )

14

both suits, and; (4) a full and fair opportunity for plaintiff to litigate the claim in the first suit. *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997); *see also Waterview Resolution Corp. v. Allen,* 274 Kan. 1016, 1023 (2002) (citing *Regency Park v. City of Topeka*, 267 Kan. 465, 478 (1999)).  Put simply, "[w]hen the same facts, same parties, and same issues have previously been litigated before a court of competent jurisdiction, the doctrine of res judicata prevents a second assertion of the same claim." *Steele v. Guardianship and Conservatorship of Crist*, 251 Kan. 712, 720 (1992).

In opposition, plaintiff argues that he has previously raised claims of "defamation, false light, and tort of outrage[,]" but because this matter is one for negligence, res judicata is inapplicable.  *See* Opp'n ¶¶ 2–7, 12.  He also suggests that his negligence claims may survive because the District of Kansas "never stated that the alleged conduct of any of the 3 defendants [Flanagan, Ganz, and Messenger] was not wrongful [under a negligence standard][,]" *see* Surreply at p. 2, and that the court's "ruling that [] plaintiff has failed to state a claim for defamation does not rule out that there was not [other] wrongful action done," *id.* at 2–3.

Importantly, however, claim preclusion "applies not only to claims that were actually litigated, but also to claims that *should* have been litigated in the first action but were not." *Zhu v.*

_____

444, 447–48 (1991) ("With no hesitation we find the requisite privity existing here insofar as Harp Well and Pump Services, Inc., and Parson—an employer and its employee—are concerned.").  Arkansas law also holds that a "principal-agent relationship is sufficient to satisfy the privity requirement for purposes of res judicata[,]"  *Winrock Grass Farm Inc., v. Affiliated Real Estate Appraisers of Arkansas, Inc.*, 2010 Ark. App. 279 (2010) (citing *Jayel Corp. v. Cochran*, 366 Ark. 175, 180–82 (2006)), particularly when the newly proposed defendants' "existence and actions were known to the plaintiff during the prior litigation[,]" *id.* (collecting cases).

*St. Francis Health Center*, 413 F. Supp. 2d 1232, 1239 (D. Kan. 2006) (emphasis added) (applying Kansas law and citing *Jackson Trak Group, Inc. v. Mid States Port Auth.*, 242 Kan. 683, 690 (1988) (other citations omitted)), *aff'd* and remanded for the sole purpose of determing sanctions against plaintiff, 215 Fed. Appx. 717 (10th Cir. Feb. 1, 2007), *cert. denied*, 555 U.S. 940 (2008).  Similarly, "[i]f a plaintiff fails to present all grounds or theories for relief arising from the single wrong, []he may not split the cause of action or claim by bringing a subsequent suit that alleges new theories." *Id.* (citing *Parsons Mobile Prods., Inc. v. Remmert*, 216 Kan. 138, 140 (1975) (other citations omitted)).

Here, claim preclusion prevents plaintiff from raising negligence claims against NPR, Flanagan, Ganz, and Messenger.  These four defendants were already sued in the Kansas Case, and "although plaintiff has changed h[is] theories of recovery to some extent, as set out above . . . plaintiff's theories for relief all arise" from defendants' alleged publication of the defamatory article, and the alleged subsequent refusal to permanently remove the article or to otherwise remedy the situation, all of which plaintiff believes to be contrary to NPR's internal policies and other standards of journalism. *See id*. at 1240; *Parsons Mobile Prods*., 216 Kan. at 140.  And even assuming *arguendo* that these negligence claims were "new," plaintiff provides no reason why they *could not have been* raised in the Kansas Case.

Furthermore, plaintiff had a "full and fair opportunity" to litigate these claims against NPR, Flanagan, Ganz, and Messenger.  The claims were fully examined by the District of Kansas, and plaintiff was provided yet an additional opportunity to amend his claims before they were

16

ultimately dismissed with prejudice on the merits.  The District of Kansas then yet again considered plaintiff's arguments upon reconsideration before denying relief.  Next, the Tenth Circuit considered the matter on appeal and affirmed the dismissal, and finally, the Supreme Court denied plaintiff's petition for writ of certiorari.  Because not one, but three, federal courts of competent jurisdiction have considered these claims, there is simply no "reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."  *Zhu*, 413 F. Supp. 2d at 1240 (citing *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979)).

NPR, Ganz, Flanagan, and Messenger are unquestionably the same parties, and the claims against them undoubtedly arise from the same nucleus of facts as those in the Kansas Case.  *See Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 400–01 (1997), *cert. denied*, 525 U.S. 831 (1998).  Regardless of plaintiff's insistence that "the allegations made . . . in his complaint are different" than those previously raised, the only specific argument made in support thereof is that he now alleges negligence instead of defamation, which are "two different areas of law." *See* Opp'n ¶¶ 3–8, 12, 20, 28, 45–8, 51–2, 59–66, 93; *see also* Surreply at pp. 2–3.  But the facts and allegations from his previous litigation are so nearly identical that they can be virtually transposed from one case to another.  Plaintiff is simply attempting to now repackage them under a different label, but this is a distinction without a difference.

Because all of the claims were, or alternatively, could have been raised in the Kansas Case (and yet again, were or could have been raised against NPR in the Arkansas Case), res judicata

requires dismissal with prejudice of these claims against NPR, Flanagan, Ganz, and Messenger. *See State v. Martin*, 294 Kan. 638, 640–41 (2012).

    b.  Collateral Estoppel

    Collateral estoppel, or issue preclusion, dictates that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of that issue in a suit on a different cause of action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983).

    Without a doubt, for the reasons expressed above, collateral estoppel alternatively precludes suit against NPR, Flanagan, Ganz, and Messenger. Defendants also contend that the case against the "new" defendants[5] – Jensen, Oreskes, Sweeney, Chapin, Memmott, Watson, Hart, Minatra, Lewis, Lansing, Haaga, and Turpin – is barred by collateral estoppel. MTD Mem. at pp. 16–18. In support, defendants argue that collateral estoppel "prohibits a party from re-litigating a factual or legal determination even if it arises in another litigation involving different opposing parties." *Id.* at p. 16 (citing *Gill & Duffus Servs., Inc. v. Islam*, 675 F.2d 404, 407 (D.C. Cir. 1982)

---

[5]     Plaintiff argues that he has never "sued any NPR executive before." Opp'n ¶¶ 1–2. While plaintiff may not have formally named an NPR executive in his prior cases, many of these "executives," supervisors, and attorneys, and their alleged negligence, were explicitly discussed in both the Arkansas Case and the Kansas Case, *see, e.g.*, Ark. Compl. ¶¶ 158, 233 (discussing Hart), 172 (discussing Oreskes); KS Am. Compl. ¶¶ 89 (discussing Hart, Memmott, Turpin), 111 (discussing Turpin), 112 (discussing Memmott and Turpin), 113 (discussing Jensen, Memmott, and Turpin), 116 (discussing Memmott), 121 (discussing Oreskes), 248 (same), 312–13 (discussing Memmott), 329 (same), 333 (discussing Hart, Memmott, and Turpin), 379 (discussing Hart), and if not explicitly identified by name, referenced by way of job position, title, or team, *see, e.g.,* Ark. Compl. ¶¶ 1, 10, 14, 17, 19, 23, 25, 28–41, 49, 69, 100–72, 179, 189, 200, 218, 222, 232–235; KS Compl. ¶¶ 68, 89, 112, 333, 385, 397–99, 426.

(Issue preclusion "operates not only in favor of the opposing party in the first action, it encompasses as well persons who had no part in that adjudication.")); *see also Novak*, 703 F.2d at 1309 (finding same).  While party "mutuality" is not mandatory under the law of this District, the court must apply the rubrics set forth by the other courts that have adjudged the prior litigation. *See Marrese*, 470 U.S. at 380–82; *Heiser*, 327 U.S. at 733.

 According to plaintiff, because he has now sued, for the "first time," "NPR executives, directors and members of the corporate and legal teams," the mutuality requirement is not met, and collateral estoppel is rendered inapplicable.  *See* Opp'n ¶¶ 4, 15, 93; Surreply at 3.

Turning first to the law in Kansas, " 'collateral estoppel, or issue preclusion, [requires] mutuality; i.e., the issue subject to preclusion must have arisen in a prior case in which both of the current parties were adequately represented." *Kansas Public Employees Retirement System v. Reimer & Koger Associates, Inc*., 262 Kan. 635, 670 (1997) (quoting *Jones v. Bordman*, 243 Kan. 444, 460 (1988)); *see also Koger Associates*, 262 Kan. 635 at 669–74.

However, under Arkansas law, and consistent with a majority of other jurisdictions, mutuality of parties is not mandatory for application of collateral estoppel.  *See Riverdale Development Co., LLC v. Ruffin Bldg. Systems, Inc*., 356 Ark. 90, 102 (2004) ("Arkansas has recognized and approved the defensive application of collateral estoppel, even where there is no mutuality of parties.") (citing *Fisher v. Jones*, 311 Ark. 450 (1993)); *Hooten v. Mobley Law Firm, P.A*., 2011 Ark. App. 778 (2011) (finding that the requirement of mutuality has been abandoned by most jurisdictions for collateral estoppel, especially when it is used defensively and stating that

"[u]nlike res judicata, collateral estoppel [under Arkansas law] does not require mutual identities of parties and a stranger to the first decree may assert it as a defense in a subsequent action.")

This "non-mutual defensive" collateral estoppel prevents a plaintiff from re-litigating an issue that has been previously litigated unsuccessfully in another action against a different defendant. *Woodward v. Kelly*, No. 5:19-cv-258, 2020 WL 5754009, at *5 (E.D. Ark. Aug. 28, 2020), *report and recommendation adopted*, 2020 WL 5750892 (E.D. Ark. Sept. 25, 2020) (citing *Bendet v. Sandoz Pharmaceuticals Corp*., 308 F.3d 907, 910–11 (8th Cir. 2002)).   This type of collateral estoppel exists to protect "judicial economy by precluding a plaintiff from relitigating issues by merely 'switching adversaries.' " *Id.* (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979) and *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (holding that issue preclusion bars successive litigation of an issue of fact or law litigated and resolved in a determination essential to the prior judgment, even if the issue recurs in the context of a different claim)); *see also Van Curen v. Arkansas Professional Bail Bondsman Licensing Bd*., 79 Ark. App. 43 (2002) (holding same).   Therefore, any want of mutuality is inconsequential here by application of Arkansas law.

Having resolved the issue of mutuality, in order to properly assert collateral estoppel, a party must meet four essential elements: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *East Texas Motor Freight Lines, Inc. v. Freeman*, 289 Ark. 539, 543 (1986).  All

20

four elements are met in this case, and plaintiff is barred from filing suit against the "new" defendants due to issue preclusion.

The Western District of Arkansas found, as a matter of law, that plaintiff could not plausibly state a claim for professional negligence, and upon determining that issue, dismissed those claims with prejudice.  *See Yeager*, 2020 WL 2449348 at *6.  This determination was rendered on the merits, because "it is a well-settled rule of law that a dismissal with prejudice is as conclusive of the rights of the parties as if there were an adverse judgment as to the plaintiff after a trial." *Sluder v. Steak & Ale of Little Rock, Inc.*, 368 Ark. 293, 299 (2006) (citing *Security Pac. Hous. Servs., Inc. v. Friddle*, 315 Ark. 178,182 (1993)); *see also United States v. Maull*, 855 F.2d 514, 516 n.3 (8th Cir. 1988) (holding that "it is well-established that a Rule 12(b)(6) dismissal is a 'judgment on the merits' for res judicata purposes unless the plaintiff is granted leave to amend or the dismissal is reversed on appeal.") (citing cases); Fed. R. Civ. P. 41(b) (specifying that "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").  And even if the Western District of Arkansas had dismissed these claims without prejudice, under Arkansas law, when a plaintiff chooses to appeal, he then waives the right to plead further, and the dismissal is thus converted to one with prejudice. *See Arkhola Sand & Gravel Co. v. Hutchinson*, 291 Ark. 570, 574 (1987); *Arkansas Dep't of Envtl. Quality v. Brighton Corp.*, 352 Ark. 396, 411 (2003).

21

Plaintiff raised identical negligence allegations against NPR in the Arkansas Case.  In that case, as here, plaintiff argued that NPR and others failed to exercise reasonable care and committed "extreme negligence" and "professional negligence."  *See* Ark. Compl. ¶¶ 1, 19, 38, 41, 49, 100–68, 200, 232.  He alleged that

> [t]he members of NPR's journalistic and programming teams that participated in the defamatory article and broadcast against the plaintiff did not live up to the most basic standards any media outlet must hew to. They acted with recklessness (with "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers") and in consequence the plaintiff's reputation, work, and benefit concerts were destroyed and the plaintiff was injured . . . Flanagan and Ganz's supervisors are liable for negligence and malpractice (professional negligence) because they failed to ensure the standards of NPR's Codes were met.

*Id.* ¶¶ 125–26.  Throughout that complaint, he repeatedly alleged that the "violations that were committed by NPR . . . did not only happen at the journalistic level; senior editors [] and supervisors are also responsible."  *Id.* ¶ 116–18; *see also id.* ¶¶ 105, 126, 132, 152, 156–57 (alleging same).  In support for this alleged breach of duty, plaintiff recurrently cited to the NPR Handbook and Codes, and the canons of various journalism societies.  *See id.* ¶¶ 10, 14, 17, 23, 33, 39–41, 69, 106–09, 114–16, 119–167, 200.  He also raised these same allegations against Messenger and members of the NPR legal team, arguing that they similarly breached professional and company standards and were vicariously liable for other NPR employees, *see id.* ¶¶ 28–39, 128–38, 154, 158, 235, and he again raised the same allegations against NPR officers and board members, *see id.* ¶¶ 35–8, 132, 138, 154, 172, 235.  He again contended that these attorneys, supervisors, and executives "failed to live up to their professional standards and committed a

22

breach of duty[,]" *id.* ¶ 104, by refusing to permanently remove the article and to otherwise atone for the alleged wrongdoing, *see id.* ¶¶ 14, 25, 29–41, 130, 136–37, 141, 157, 179, 189, 218, 222, 232–34.

The Western District of Arkansas held that, under Arkansas law, there is no "heightened duty of professional care for journalists," and that "most of the out-of-state cases that have addressed this question similarly reject the existence of a 'journalistic malpractice' cause of action." *Yeager*, 2020 WL 2449348 at *6 (collecting and citing cases). The court found that plaintiff needed to establish a failure to exercise proper care in the performance of a legal duty, and that, in turn, defendants owed him such a duty, but that, as an issue of law, no such duty existed, and that it could not unliterally recognize a novel cause of action. *See id.* at *5–*6. Plaintiff seeks re-litigation of this precise issue, but just as in Kansas, the law in the District of Columbia also does not recognize this type of professional negligence claim.

Plaintiff cannot avoid the consequences of the Western District of Arkansas's ruling by now raising these same negligence claims here against "different" defendants. He points out that, in his motion for reconsideration in the Arkansas Case, he retreated from any insistence on a professional negligence standard, and instead clarified that he was only discussing negligence in relation to his defamation claim. *See* Opp'n ¶ 60; *see also generally* AK Mot. Recon., ECF No. 11. In that motion for reconsideration, plaintiff vaguely postulates that "[w]hether Arkansas recognizes or not the existence of professional legal duty in the case of journalists, journalists have [a] duty, and NPR proclaims to take this duty very serious[ly]." AK Mot. Recon. at p. 34. Regardless, this eleventh-hour differentiation has no bearing on the ultimate determination in the

23

Arkansas Case, particularly because the court denied relief on reconsideration.  And the argument is circular; if plaintiff was not attempting to bring issues and claims relating to an independent negligence claim, it only bolsters defendants' argument that plaintiff continues to contrive new ways to re-litigate the underlying alleged defamation.   Thus ultimately, plaintiff cannot demonstrate that issue preclusion would serve a basic unfairness here, *see Yamaha Corp. of America v. U.S.*, 961 F.2d 245, 254 (D.C. Cir. 1992), and "given his persistence in seeking . . . [litigation of several] civil proceedings in [other district courts], coupled with the rulings rendered in those proceedings . . . invoking the preclusive impact of collateral estoppel in this case is not at odds" with any principles of fundamental fairness.[6]  *Lewis v. DEA*, 777 F. Supp. 2d 151, 163 (D.D.C. 2011), *aff'd*, 2012 WL 1155698 (D.C. Cir. Mar. 8, 2012).

As noted by defendants, "[a] losing litigant deserves no rematch after a defeat fairly suffered." MTD Mem. at p. 17 (quoting *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S.

---

[6]    Plaintiff also argues that he could not have sued the "new" defendants for negligence in his prior litigation because, based on his understanding of the Kansas opinion, neither the District of Kansas nor the Western District of Arkansas could have exercised personal jurisdiction over the individual defendants. *See* Opp'n ¶¶ 1, 15, 20, 47.  More specifically, he believes that the District of Kansas found that it had no personal jurisdiction over Messenger, and therefore, he presumes that all individual defendants must be sued in this District.  *See id*.  Plaintiff's interpretation is incorrect. The District of Kansas found that it did, in fact, have personal jurisdiction over Messenger, even though she is domiciled in the District of Columbia.  *See* First KS Mem. Op. at p. 28 n.8 (also citing cases). As noted, the court instead dismissed the case against Messenger because plaintiff had failed to state a claim, not for want of jurisdiction.  *See id*.  Therefore, the District of Kansas indicated that *it could* exercise personal jurisdiction over NPR employees domiciled in the District of Columbia. *See id*.  Aside from plaintiff's own personal belief, there has been no legal finding that he could not sue them in the District of Kansas or the Western District of Arkansas.

138, 147 (2015) (citation omitted)).  "Indeed, plaintiffs should not be permitted to forum-shop because they disliked the outcome of that earlier case."  *Administrators of Tulane Educational Fund v. Ipsen Pharma, S.A.S.*, 770 F. Supp. 2d 24, 30 (D.D.C. 2011).  For all of these reasons, this suit is issue-precluded as to all defendants and will be dismissed with prejudice.

c.   Failure to State a Claim

Even if plaintiff was not precluded by collateral estoppel, he alternatively still fails to state a claim for negligence against any of the "new" defendants.  Preliminarily, in setting forth the "grounds" of "entitle[ment] to relief" a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555–56.  Pursuant to this standard, and Federal Rule 8(a), plaintiff has failed to specify a duty or alleged wrongdoing by these defendants.

The allegations against the senior journalists Chapin, Memmott, and Watson do not extend beyond the implication that their supervisory positions alone should render them somehow culpable.  *See* Compl. ¶ 146; Compl. Ex. A.  The allegations against the officers and board members fare no better.  Plaintiff again alleges that Turpin, as NPR's Vice President, should be responsible merely based on his position.  *See id*. ¶ 146.  The claims against Lansing and Jensen are also based on their positions alone, and supports this supposition only by alleging that they failed to follow NPR's Handbook and Codes, *see id*. ¶¶ 105–10, 146, 183, and failed to "rectify things, and together find a solution without filing a lawsuit[,]" *id.* ¶ 204; *see* Opp'n ¶¶ 42–3.  Similarly, plaintiff again bases the allegations against the NPR attorneys – Hart, Minatra, and

Lewis – on their alleged failure to follow NPR's Handbook and Codes, and alleged refusal to recognize plaintiff's hardship and to somehow make amends to his satisfaction. *See* Compl. ¶¶ 85, 146, 152, 174, 201.  And any claims against them fundamentally fail because, as the District of Kansas and the Western District of Arkansas found, as a matter of law, that plaintiff failed to show that the journalists violated any duty to him, sufficient to constitute  a claim of either defamation or false light.  Given these conclusions, it would be irreconcilable for this court to then conclude that the journalists' superiors owed a duty to plaintiff or were somehow otherwise obligated to provide him with a remedy.

Finally, the allegations against former NPR former executives – Oreskes, Sweeney, and Haaga, bear no relevance. *See id*. ¶¶ 82–6, 146; Opp'n ¶ 54.  While plaintiff attempts to bring attention to other alleged incidents at NPR to show an overall "lack of honesty in NPR's leadership[,]" Opp'n ¶ 38, these anecdotes have no applicability to plaintiff's specific issues, claims, and alleged injuries. This, in turn, raises a fundamental defect in plaintiff's ability to bring suit against these particular defendants.

Significantly, even if plaintiff had pleaded with more specificity, as noted, the claims must fail because District of Columbia law does not recognize a cause of action for journalistic professional negligence.  Plaintiff has cited to no authority, and the court is aware of none, that has applied a professional duty of care to a journalist.  Similarly, he provides no authority by which the court may somehow legally enforce NPR's Handbook or Codes, PBS's Mission Statement, or the other standards espoused by various journalism societies. *See Robinson v. WMATA*, 941 F.

Supp. 2d 61, 69 (D.D.C. 2013) (requiring discrete legal authority to establish that rules and guidelines represent a national standard versus an aspirational practice), *aff'd*, 774 F.3d 33 (D.C. Cir. 2014). "Aspirational practices do not establish the standard of care which the plaintiff must prove in support of an allegation of negligence." *Varner v. District of Columbia* 891 A.2d 260, 272 (D.C. 2006) (citing *Messina v. District of Columbia*, 663 A.2d 535, 538 (D.C. 1995)); see *Beckwith v. Interstate Management Co., LLC*, 82 F. Supp. 3d 255, 263, *id.* n.9 ("under D.C. law," "best practices" and "aspirational industry standards cannot suffice" as a standard of care) (internal quotation marks, alterations, and additional citation omitted) (quoting *Briggs v. WMATA*, 481 F.3d 839, 848 (D.C. Cir. 2007)). The court cannot recognize a non-existent cause of action.

And to establish the elements of an *ordinary* negligence claim, plaintiff must plausibly allege that defendants owe him a duty of care, and that they breached that duty, thereby causing him harm. *See, e.g., District of Columbia v. Harris*, 770 A.2d 82, 87 (D.C. 2001). He "must specify a negligent act and 'characterize the duty whose breach might have resulted in negligence liability.' " *District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982) (quoting *Kelton v. District of Columbia*, 413 A.2d 919, 922 (D.C. 1980)). The existence of a legal duty owed by defendants to plaintiff is an essential element of a negligence claim. *Wash. Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009).

Plaintiff has failed to identify any duty of care owed to him. While he often repeats the legal elements of a negligence claim, *see, e.g.*, Opp'n ¶¶ 16–17, 45, 65, 71–86, 96, 98, aside from his unsupported insistence that NPR's own Handbook and Codes instill some sort of obligation,

there is nothing in plaintiff's briefing to establish an actual legal duty.  It is clear that plaintiff believes that he is entitled to compensation for his suffering, but he does not identify a legal obligation by which any of these defendants are required to do so, particularly when prior final court judgments have already been entered in their favor.  A description of a legal duty cannot, "rest on mere 'conclusory assertions.' " *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010) (quoting *White*, 442 A.2d at 162).  Essentially, plaintiff has not "nudged" his negligence claim "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

It follows then that, without a predicate negligence claim, to the extent that plaintiff sues the senior NPR journalists and NPR executives for failure to supervise, or NPR attorneys for failure to rectify, he also fails to state a viable claim.  "[A] common law claim of negligent supervision may be predicated only on common law causes of action or duties otherwise imposed by the common law . . .  [and] [t]o hold otherwise would be to impose liability on employers for failing to prevent a harm that is not a cognizable injury under the common law." *Tridico v. District of Columbia*, 130 F. Supp. 3d 17, 31 (D.D.C. 2015) (internal quotation marks omitted); *see also Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007) (holding same). Because plaintiff has failed to adequately plead a negligence action, he cannot then maintain a claim against the purported superiors for negligently retaining or supervising. *See Islar v. Whole Foods Market Group*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016) (dismissing negligent supervision and retention claims where plaintiff could not identify a "predicate claim . . . that would permit him to recover on a negligent supervision or retention theory").

Furthermore, plaintiff fails to identify any legal duty owed to him by NPR's attorneys. Notably, opposing counsel is not legally obligated in any way to an adverse party.[7]  *See Bell v. United States*, 301 F. Supp. 3d 159, 164 (D.D.C. 2018), *aff'd*, 2018 WL 6720681 (D.C. Cir. Dec. 17, 2018).  More specifically, "because 'there is no common law duty between a plaintiff and opposing counsel, [there is] no standard of care that could be breached.' " *Id.* (quoting *Ginsberg v. Granados*, 963 A.2d 1134, 1141 (D.C. 2009)); *Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 9 (D.D.C. 1990) (holding that negligence claims "must fail because an attorney owes no duty to opposing counsel or an adverse party"); *Morowitz v. Marvel*, 423 A.2d 196, 199 (D.C. 1980) (finding that "a negligence action will not lie . . . against adverse counsel . . . primarily for the reason that there is an absence of privity . . . between counsel and an opposing party and for public policy reasons").

In sum, even if res judicata and collateral estoppel did not preclude suit, plaintiff has failed to state a claim upon which relief may be granted because (1) District of Columbia law does not

---

[7]    Insofar as plaintiff may insinuate legal malpractice committed by NPR's attorneys, he has failed to state a claim because "[b]efore an attorney can have a duty to a client, there must be an attorney-client relationship." *Hinton v. Rudasill*, 624 F. Supp. 2d 48, 53 (D.D.C. 2009) (applying District of Columbia law), *aff'd*, 384 Fed. Appx. 2 (D.C. Cir. 2010); *Smith v. Haden*, 872 F. Supp. 1040, 1044, 1053 (D.D.C. 1994) (stating that plaintiff must establish the existence of an attorney-client relationship in order to sustain a legal malpractice suit under District of Columbia tort law), *aff'd*, 69 F.3d 606 (D.C. Cir. 1995).  Accordingly, because there was never an attorney-client relationship between plaintiff and defendants, "he cannot sustain a claim for legal malpractice under the tort law of the District of Columbia." *Lewis v. United States*, 83 F. Supp. 3d 198, 208 (2015) (citing *Smith*, 872 F. Supp. at 1044), *aff'd*, 2015 WL 9003971 (D.C. Cir. Oct. 30, 2015).

recognize the proposed professional negligence claims, and (2) plaintiff has otherwise failed to state a claim for negligence under District of Columbia tort law.

IV.   <u>CONCLUSION</u>

Ultimately, after receiving unfavorable determinations in his prior litigation, plaintiff is now attempting to "end-run the requirements for a defamation claim by pleading it as a negligence claim[,]" which is "not recognize[d] under D.C. law." *Teltschik v. Williams & Jensen, PLLC*, 748 F.3d 1285, 1287–88 (D.C. Cir. 2014) (also finding that "no D.C. case holds that a plaintiff may maintain a negligence action for a defamatory statement" where, as here, "the defamation claim would be barred."). Consequently, and for all of the foregoing reasons, the court concludes that defendants are entitled to dismissal of all claims with prejudice. A separate order accompanies this memorandum opinion.

DATE: August 10, 2021

_/s/_____
RUDOLPH CONTRERAS
United States District Judge